Debtor  The Container Store, Inc.
_____  Case number *(if known)* _____
Name

---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known):* _____    Chapter  11

☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy          06/24

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| **1.  Debtor's Name** | **The Container Store, Inc.** | |
| **2.  All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | | |
| **3.  Debtor's federal Employer Identification Number** (EIN) | **75-1596981** | |
| **4.  Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | **500 Freeport Parkway**<br>Number          Street | Number          Street |
| | **Coppell**              **TX**      **75019**<br>City                    State    Zip Code | City                         State    Zip Code |
| | | **Location of principal assets, if different from principal place of business** |
| | **Dallas**<br>County | Number          Street |
| | | City                         State    Zip Code |
| **5.  Debtor's website** (URL) | https://www.containerstore.com/ | |
| **6.  Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: _____ | |

| Debtor | The Container Store, Inc. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

---

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**4491 Furniture and Home Furnishings Retailers**

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11.  *Check all that apply:*

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.A plan is being filed with this petition.

☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the **Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11** (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes

| | District _____ | When _____ MM/DD/YYYY | Case number _____ |
|---|---|---|---|
| | District _____ | When _____ MM/DD/YYYY | Case number _____ |

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes

| Debtor | **See Attached Rider 1** | Relationship _____ |
|---|---|---|
| District | _____ | When: **12/22/2024** MM / DD / YYYY |
| Case number, if known | _____ | |

---

Debtor    The Container Store, Inc.            Case number *(if known)* _____
         Name

---

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____
Number      Street

_____

_____
City      State    Zip Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

| | **Statistical and administrative information** |
|---|---|

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors***

*\*Consolidated for all Debtors.*

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☒ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets***

*\*Consolidated for all Debtors.*

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities***

*\*Consolidated for all Debtors.*

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

---

Debtor   The Container Store, Inc.                                    Case number *(if known)*   _____
         Name

| | Request for Relief, Declaration, and Signatures |

**WARNING --**  Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- I have been authorized to file this petition on behalf of the debtor.

- I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **12/22/2024**
              MM/ DD / YYYY

✗   _**/s/ Chad Coben**_                          **Chad Coben**
    Signature of authorized representative of debtor    Printed name

Title   **Chief Restructuring Officer**

**18. Signature of attorney**

✗   _**/s/ Timothy A. Davidson II**_              Date   **12/22/2024**
    Signature of attorney for debtor                     MM/DD/YYYY

**Timothy A. Davidson II**

**Hunton Andrews Kurth LLP**
Firm name

**600 Travis Street, Suite 4200**
Number              Street

**Houston**                                      **TX**          **77002**
City                                             State         ZIP Code

**713-220-4200**                                 **taddavidson@HuntonAK.com**
Contact phone                                    Email address

**24012503**                          **TX**
Bar number                            State

**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "***Debtors***") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas.  Contemporaneously with the filing of their voluntary petitions, the Debtors are filing a motion with the Court requesting that their chapter 11 cases be consolidated for procedural purposes only and jointly administered.

| Entity Name | Federal Employee Identification Number (EIN) |
|---|---|
| The Container Store Group, Inc. | 26-0565401 |
| The Container Store, Inc. | 75-1596981 |
| TCS Gift Card Services, LLC | 20-1367975 |
| C Studio Manufacturing Inc. | 20-8164763 |
| C Studio Manufacturing LLC | 41-2225770 |

Fill in this information to identify the case and this filing:

Debtor Name  The Container Store, Inc.

United States Bankruptcy Court for the:        Southern District of Texas

(State)

Case number (If known):

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   Schedule A/B: Assets-Real and Personal Property *(Official Form 206A/B)*

☐   Schedule D: Creditors Who Have Claims Secured by Property *(Official Form 206D)*

☐   Schedule E/F: Creditors Who Have Unsecured Claims *(Official Form 206E/F)*

☐   Schedule G: Executory Contracts and Unexpired Leases *(Official Form 206G)*

☐   Schedule H: Codebtors *(Official Form 206H)*

☐   Summary of Assets and Liabilities for Non-Individuals *(Official Form 206Sum)*

☐   Amended Schedule ____

☒   Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☒   Other document that requires a declaration **Corporate Ownership Statement and List of Equity Security Holders**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| **12/22/2024** | */s/ Chad Coben* |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Chad Coben** |
| | Printed name |
| | **Chief Restructuring Officer** |
| | Position or relationship to debtor |

US-DOCS\156058255.4

| Fill in this information to identify the case: |
|---|
| Debtor name: The Container Store Group, Inc. et al. |
| United States Bankruptcy Court for the Southern District of Texas |
| Case number (if known): |

☐ Check if this is an amended filing

<u>Official Form 204</u>

**Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders**

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|---|
| 1 | IRIS USA, INC. 13423 W. CACTUS RD. SURPRISE, AZ 85379 | TANYA ROCHA PHONE: 602-707-1770 EMAIL: TANYA.ROCHA@IRISUSAINC.COM | TRADE DEBT | | | | $     2,960,515.09 |
| 2 | INTERDESIGN, INC. 30725 SOLON INDUSTRIAL PKWY SOLON, OH 44139 | ILESE OKEEFE PHONE: 440-248-0178 EMAIL: ILESE.OKEEFE@INTERDESIGNUSA.COM | TRADE DEBT | | | | $     1,857,663.33 |
| 3 | OXO INTERNATIONAL, LTD. 601 W 26TH ST SUITE 1050 NEW YORK, NY 10001 | REBECCA SIMKINS PHONE: 212-242-3333 EMAIL: RSIMKINS@OXO.COM | TRADE DEBT | | | | $     1,838,604.04 |
| 4 | PMG WORLDWIDE, LLC 2821 W. 7TH STREET SUITE 270 FORT WORTH, TX 76107 | GEORGE POPSTEFANOV PHONE: 817-288-4082 EMAIL: GEORGE@PMG.COM | TRADE DEBT | | | | $       987,962.57 |
| 5 | NINGBO VACANE IMPORT & EXPORT CO., LTD. NO 132, CHEZHAN WEST ROAD HUANGTANG TOWN, NINGHAI NINGBO, 315600 CHINA | AMY ZHENG PHONE: +8657459951663 EMAIL: SALES04@SH-TAIZHONG.CN | TRADE DEBT | | | | $       520,846.18 |
| 6 | EVERGREEN SHIPPING AGENCY (AMERICA) CORP 16000 DALLAS PKWY DALLAS, TX 75248 | RODNEY BLEDSOE PHONE: 972-246-2271 EMAIL: RODNEYBLEDSORE@EVERGREEN-SHIPPING.US | TRADE DEBT | | | | $       394,583.60 |
| 7 | FEDEX FEDEX CORP POB 660481 DALLAS, TX 75266 | CHAZ GAGNE PHONE: 405-824-8727 EMAIL: CGAGNE@FEDEX.COM | TRADE DEBT | | | | $       343,855.94 |
| 8 | J&O PLASTICS INC 12475 SHEETS ROAD RITTMAN, OH 44270 | MARY MOHLER PHONE: 330-927-3169 EMAIL: MMOHLER@JANDOPLASTICS.COM | TRADE DEBT | | | | $       331,106.75 |
| 9 | SAPIENT CORPORATION 40 WATER STREET BOSTON, MA 02109 | JORGE BADRAN EMAIL: JORGE.BADRAN@PUBLICSAPIENT.COM | TRADE DEBT | | | | $       307,292.00 |
| 10 | ANKURA INTERMEDIATE HOLDINGS, LP 485 LEXINGTON AVE NEW YORK, NY 10017 | KEITH JELINEK PHONE: 248-894-8264 EMAIL: KEITH.JELINEK@ANKURA.COM | PROFESSIONAL SERVICES | | | | $       296,360.01 |
| 11 | LC DESIGNS COMPANY LIMITED UNIT 807 8/F KWONG LOONG TAI BUILDING 1016-1018 TAI NAN WEST STREET KOWLOON, HONG KONG | KEVIN PESTELL EMAIL: KEVINPESTELL@LC-DESIGNS.CO.UK | TRADE DEBT | | | | $       285,453.50 |
| 12 | R X O FREIGHT FORWARDING 27839 NETWORK PLACE CHICAGO, IL 60673-1278 | KENNETH BURGER PHONE: 214-763-5654 EMAIL: KENNETH.BURGER@RXO.COM | TRADE DEBT | | | | $       277,244.56 |
| 13 | TRANSCON SHIPPING CO., INC. 525 S DOUGLAS STREET #280 EL SEGUNDO, CA 90245 | ERIC BARCOMB PHONE: 310-216-2188 EXT- 112 EMAIL: ERICB@TRANSCONSHIPPING.COM | TRADE DEBT | | | | $       271,810.00 |
| 14 | PURA SCENTS, INC. 2100 PLEASANT GROVE BLVD. #600 PLEASANT GROVE, UT 84062 | ADDISON HARRIS PHONE: 435-881-8151 EMAIL: ADDISON@PURA.COM | TRADE DEBT | | | | $       256,955.84 |
| 15 | ECHO GLOBAL LOGISTICS, INC. 22168 NETWORK PLACE CHICAGO, IL 60673 | GREG DUGAN EMAIL: GDUGAN@ECHO.COM | TRADE DEBT | | | | $       221,313.53 |
| 16 | WURTH BAER SUPPLY COMPANY 909 FOREST EDGE DR VERNON HILLS, IL 60061 | CANDY DEBARTOLO PHONE: 800-911-2237 EXT 4360 EMAIL: CANDY.DEBARTOLO@WURTHBSC.COM | TRADE DEBT | | | | $       199,973.07 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | STEEL TECHNOLOGY, LLC DBA HYDRO FLASK 561 NW YORK DR. BEND, OR 97703 | MELISSA DE SOUZA MOSELA PHONE: 800-236-1478 EMAIL: MMOSELA@HELENOFTROY.COM | TRADE DEBT | | | | $ 193,004.48 |
| 18 | TEST-RITE INTL CO., LTD. 6F, NO.23 HSIN HU 3RD ROAD NEI HU DISTRICT TAIPEI, 114 TAIWAN | CAROL YU PHONE: 886287915888 EMAIL: AM-LA-HOME@TESTRITEGROUP.COM | TRADE DEBT | | | | $ 186,967.48 |
| 19 | DJS INTERNATIONAL SERVICES, INC. P.O. BOX 612785 DFW AIRPORT, TX 75261 | LINDA STEWART EMAIL: LINDA.STEWART@DJSINTL.COM | TRADE DEBT | | | | $ 184,285.59 |
| 20 | SWIFT TRANSPORTATION SERVICES, LLC P.O. BOX 643985 PITTSBURGH, PA 15264-3985 | VIRGINIA HENKELS EMAIL: GINNIE_HENKELS@SWIFTTRANS.COM | TRADE DEBT | | | | $ 176,588.35 |
| 21 | YORK (ASIA) LIMITED 5/F GUANGHUA GROUP BUILDING TERRA 8TH ROAD, FUTIAN SHENZHEN, 518040 CHINA | IVY PENG PHONE: +8618566662290 EMAIL: IVY.PENG@YORKASIA.COM | TRADE DEBT | | | | $ 163,863.61 |
| 22 | POPPIN FURNITURE LLC 727 GREENTREE RD LOS ANGELES, CA 90272 | ALLIE DIEP PHONE: 949-295-3410 EMAIL: ADIEP@POPPIN.COM | TRADE DEBT | | | | $ 154,834.30 |
| 23 | INTERMETRO INDUSTRIES CORPORATION 651 NORTH WASHINGTON ST WILKES-BARRE, PA 18705 | ROB NAPKORI PHONE: 570-706-4236 EMAIL: ROB.NAPKORI@METRO.COM | TRADE DEBT | | | | $ 153,461.04 |
| 24 | XPO LOGISTICS, LLC XPO LOGISTICS - BROKERAGE 27724 NETWORK PLACE CHICAGO, IL 60673 | KENNETH BURGER PHONE: 214-763-5654 EMAIL: KENNETH.BURGER@RXO.COM | TRADE DEBT | | | | $ 148,812.14 |
| 25 | FC BRANDS LLC 131 W. 35TH STREET SUITE 801 NEW YORK, NY 10001 | MATT DAVID PHONE: 212-432-0001 EMAIL: OPS@FULLCIRCLEHOME.COM | TRADE DEBT | | | | $ 147,007.03 |
| 26 | SCHWARZ PAPER COMPANY, LLC 8338 AUSTIN AVE MORTON GROVE, IL 60053 | MICHAEL GARY PHONE: 847-583-7189 EMAIL: MICHAEL.GARY@SCHWARZ.COM | TRADE DEBT | | | | $ 143,362.37 |
| 27 | HULKEN INC. 110 N. BROCKWAY ST. PALATINE, IL 60067 | TANYA HAMILTON PHONE: 916-571-7083 EMAIL: BILLING@HULKENBAG.COM | TRADE DEBT | | | | $ 142,128.88 |
| 28 | IMPACT TECH, INC. 223 E. DE LA GUERRA SANTA BARBARA, CA 93101 | ANDREW CARVALHO EMAIL: ANDREW.CARVALHO@IMPACT.COM | TRADE DEBT | | | | $ 133,740.88 |
| 29 | WHITMOR, INC. P.O. BOX 1000/DEPT. 109 MEMPHIS, TN 38148 | JERRI PERRAULT PHONE: 888-944-8667 EMAIL: AR@WHITMOR.COM | TRADE DEBT | | | | $ 128,071.28 |
| 30 | RASHON HAYES COUNSEL REPRESENTATION LAWYERS FOR JUSTICE, PC 410 ARDEN AVE, SUITE 203 GLENDALE, CA 91203 | EDWIN AIWAZIAN, COUNSEL REPRESENTATION PHONE: 818-265-1020 | SETTLEMENT | CONTINGENT, UNLIQUIDATED | | | UNLIQUIDATED |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| The Container Store, Inc., | ) | Case No. 24-_____(___) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## <u>CORPORATE OWNERSHIP STATEMENT</u>

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Equity Interest Holder | Approximate Percentage of Equity Interests Held |
|---|---|
| The Container Store Group, Inc. | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| The Container Store, Inc., | ) | Case No. 24-_____(___) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## LIST OF EQUITY SECURITY HOLDERS

      Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the above-captioned debtor and debtor in possession (the "**Debtor**") respectfully represents that the following is the list of holders of the Debtor's sole class of equity or membership interests:

      ☐   There are no equity security holders or corporations that directly or indirectly own 10% or more of any class of the Debtor's equity interest.

      ☒   The following are the Debtor's equity security holders (list holders of each class, showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder):

| Name and Last Known Address of Place of Business of Holder | Kind/Class of Interest | Percentage of Interests Held |
|---|---|---|
| The Container Store Group, Inc.<br>500 Freeport Parkway<br>Coppell, Texas 75019 | Shares | 100% |

**UNANIMOUS WRITTEN CONSENT OF**
**THE APPROVING PARTY OF**
**EACH COMPANY LISTED BELOW**

December 20, 2024

The undersigned, being (a) all members of the Board of Directors, (b) all of the members of the Board of Managers, or (c) the sole member, as applicable (in each case, an "Approving Party" and, collectively, the "Approving Parties"), of the following corporations and limited liability companies:

(i)     The Container Store Group, Inc., a Delaware corporation ("TCS");

(ii)    C Studio Manufacturing Inc., a Delaware corporation;

(iii)   C Studio Manufacturing LLC, a Delaware limited liability company;

(iv)    The Container Store, Inc., a Texas corporation; and

(v)     TCS Gift Card Services, LLC, a Virginia limited liability company.

(each such entity, a "Company" and, collectively, the "Companies"), do hereby consent to, adopt and approve, ratify, and confirm by unanimous written consent, in each case pursuant to and in accordance with (a) the provisions of such Company's (i) certificate of incorporation, articles of incorporation or certificate of formation, as applicable, and (ii) bylaws or LLC Agreement (as defined below), as applicable, and (b) the applicable provisions of (i) the General Corporation Law of the State of Delaware (the "DGCL"), (ii) the Limited Liability Company Act of the State of Delaware (the "Delaware LLC Act"), (iii) the Business Corporation Act of the State of Texas, and (iv) the Limited Liability Company Act of the Commonwealth of Virginia, as applicable, the following resolutions and authorize the taking of all actions contemplated thereby:

**WHEREAS**, reference is hereby made to the following limited liability company agreements: (i) the Amended and Restated Operating Agreement of C Studio Manufacturing LLC (f/k/a Closet Works, LLC, dated February 11, 2022; and (ii) the Operating Agreement of TCS Gift Card Services, LLC, effective as of March 3, 2004 (collectively, the "LLC Agreements", and each an "LLC Agreement");

**WHEREAS**, the Approving Party of each Company has had the opportunity to consult with management and the legal and financial advisors of such Company to fully consider, and has considered, the strategic alternatives available to such Company;

**WHEREAS**, the Board of TCS previously delegated to a committee of an independent member of the TCS Board (the "Special Committee"), certain responsibilities, powers, and authority to, among other things, consider, evaluate, and negotiate various strategic alternatives for or on behalf of TCS and its subsidiaries, including, without limitation, an in-court or out-of-court restructuring or other transaction in an effort to preserve and to maximize the value of the Company and its assets (each such strategic transaction, a "Strategic Transaction" and collectively, the "Strategic Transactions") and recommend to the TCS Board whether to approve and authorize TCS and each other Company to pursue a Strategic Transaction;

1

**WHEREAS**, the Special Committee has, with the assistance of management, legal advisors, financial advisors, and investment bankers of the Companies, considered the liabilities and liquidity of the Companies, the Strategic Transactions available to the Companies, the strategic alternatives available to them, and the impact of the foregoing on the Companies' businesses, and authorized and recommended to the TCS Board and the other Approving Parties that the actions contemplated hereby are desirable and in the best interests of each Company, its respective creditors, and other parties in interest; and

**WHEREAS**, the Approving Party of each Company desires to adopt and approve the following resolutions.

## I.    Commencement of Chapter 11 Cases

**NOW, THEREFORE, BE IT RESOLVED**, that the Approving Party of each Company has determined, after consultation with the management and the legal and financial advisors of such Company, and, upon the recommendation and authorization by the Special Committee, that it is desirable and in the best interests of such Company, its creditors, and other parties in interest that a petition be filed by such Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and be it further

**RESOLVED**, that any officer of such Company, including the CRO (as defined below) upon his appointment as provided herein (each, an "Authorized Officer"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, and file in the name and on behalf of such Company, and under its seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, papers, affidavits, declarations, orders, and other documents in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), and, in connection therewith, to take and perform any and all further acts and deeds which such Authorized Officer deems necessary, proper, or desirable in connection with such Company's chapter 11 case (the "Chapter 11 Case"), including, without limitation, (a) the payment of fees, costs, expenses, and taxes such Authorized Officer deems necessary, appropriate, or desirable, and (b) negotiating, executing, delivering, performing, filing, and recording any and all additional documents, schedules, statements, lists, papers, agreements, certificates, notices, and instruments (or any amendments, supplements, or modifications thereto) in connection with, or in furtherance of, the Chapter 11 Case of such Company, with a view to the successful prosecution of the Chapter 11 Case of such Company (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard); and be it further

## II.    Transaction Documents

**RESOLVED**, that in connection with each Chapter 11 Case, the Approving Party of each Company has determined, upon the recommendation and authorization by the Special Committee, that it is in the best interests of each Company to enter into (i) a transaction support agreement (together with any exhibits and other attachments annexed thereto, the "Transaction Support Agreement") and (ii) a commitment letter with Eclipse Business Capital LLC ("EBC") in connection with (a) a debtor in possession asset based revolving credit facility relating and (b) an exit asset based revolving credit facility (the "ABL Commitment Letter"), in each case on terms

and conditions substantially similar to those set forth in the forms of documents previously provided to the Approving Party of such Company (with such changes as may be approved pursuant to the delegation of authority set forth herein); and be it further

**RESOLVED**, that, with respect to each Company governed by the DGCL, pursuant to Section 144 of the DGCL, no contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other corporation, partnership, association or other organization in which one or more of its directors or officers, are directors or officers, or have a financial interest (each, an "Interested Party"), is void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee which authorizes the contract or transaction, or solely because any such director's or officer's votes are counted for such purpose, if: (i) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or the committee, and the board or committee in good faith authorizes the contract or transaction by the affirmative votes of the majority of the disinterested directors, even though the disinterested directors be less than a quorum; (ii) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders; or (iii) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors, a committee or the stockholders; and be it further

**RESOLVED**, that, it is hereby disclosed or made known to the board of directors of TCS (the "TCS Board") that (i) one or more affiliates of Leonard Green & Partners, L.P. ("LGP") has a material equity ownership in TCS and accordingly, may be viewed as having an interest in the transactions contemplated by the Transaction Support Agreement and further described under Section IV below (the "Interested Transactions") and (ii) Kristofer Galashan (the "LGP Director"), member of the TCS Board, has affiliations to LGP, and therefore may be viewed as having an interest in the Interested Transaction; and be it further

**RESOLVED**, that having disclosed to the TCS Board that he may be an Interested Party the LGP Director executes this consent only after all other directors of the TCS Board have executed this consent, for the sole purpose of allowing the approval of the Interested Transactions to occur through unanimous written consent in lieu of a meeting of the TCS Board; and be it further

**RESOLVED**, that, the TCS Board is aware of all of the material facts related to the Interested Transactions and has had an adequate opportunity to ask questions regarding, and investigate the nature of, the relationship and/or interest of the LGP Director as an Interested Party with and in the Company regarding the Interested Transactions; and be it further

**RESOLVED**, that, after careful consideration, and, upon the recommendation and authorization by the Special Committee, the TCS Board has determined that the terms and conditions of the Interested Transactions are just and reasonable as to the Company and that it is in the best interests of the Company to perform its obligations in connection therewith; and be it further

3

**RESOLVED**, that, upon the recommendation by the Special Committee, the TCS Board hereby determines that the Interested Transactions are fair, just and reasonable to the Company within the meaning of Section 144 of the DGCL; and be it further

**RESOLVED**, that, upon the recommendation and authorization by the Special Committee, the TCS Board hereby authorizes and approves the Interested Transactions for all purposes, including without limitation with respect to Section 144 of the DGCL and, to the extent applicable, in context of the Company's Code of Business Conduct and Ethics and Related Person Transaction Policy; and be it further

**RESOLVED**, that the Approving Party of each Company hereby delegates to each Authorized Officer the authority to approve the form, terms, and provisions of the Transaction Support Agreement and the ABL Commitment Letters, and the execution, delivery, and performance thereof and the consummation of the transactions contemplated thereunder by such Company, including, without limitation, the amount of and the making of any payments to be made in connection therewith; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to enter into, execute, deliver, certify, file and/or record, and perform the obligations arising under, the Transaction Support Agreement and the ABL Commitment Letters, each together with such other documents, agreements, instruments, notices, and certificates as may be required by, or appropriate in connection therewith; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Transaction Support Agreement, the ABL Commitment Letters and/or any related documents which shall, in such Authorized Officer's sole judgment, be necessary, proper or advisable; and be it further

## III.  <u>Plan and Disclosure Statement</u>

**RESOLVED**, that in connection with each Chapter 11 Case, the Approving Party of each Company has determined it is in the best interests of each Company to approve the chapter 11 plan (together with any exhibits and other attachments annexed thereto, the "<u>Plan</u>") and associated disclosure statement (together with any exhibits and other attachments annexed thereto, the "<u>Disclosure Statement</u>") on terms and conditions substantially similar to those set forth in the form of Plan and Disclosure Statement previously provided to the Approving Party of such Company (with such changes as may be approved pursuant to the delegation set forth herein); and be it further

**RESOLVED**, that the Approving Party of each Company hereby delegates to each Authorized Officer the authority to approve the form, terms, and provisions of the Plan and Disclosure Statement and the execution, delivery, and performance thereof and the consummation of the transactions contemplated thereunder by such Company, including, without limitation, the amount of and the making of any payments to be made in connection therewith; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to enter into, execute, deliver, certify, file and/or record, and perform the obligations arising under, the Plan and Disclosure Statement together with such other documents, agreements, instruments, notices, and certificates as may be required by the Plan and Disclosure Statement; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Plan and Disclosure Statement and/or any related documents which shall, in such Authorized Officer's sole judgment, be necessary, proper or advisable; and be it further

## IV.   Debtor-in-Possession Financing

*DIP Term Loan Facility*

**RESOLVED**, that in connection with the Chapter 11 Case of each Company, the Approving Party of each Company has determined that it is in the best interests of each Company to consummate the transactions under that certain senior secured super-priority debtor-in-possession credit facility consisting of a term loan credit facility in an aggregate principal amount of up to $115 million, to be evidenced by that certain Senior Secured Super-Priority Priming Debtor-In-Possession Term Loan Credit Agreement, by and among, The Container Store, Inc., The Container Store Group, Inc., its subsidiaries party thereto, the lenders and other parties from time to time party thereto, Acquiom Agency Services LLC ("Acquiom"), as co-administrative agent and Seaport Loan Products LLC, as co-administrative agent and Acquiom as Collateral Agent (together with any exhibits and other attachments annexed thereto, the "DIP Term Loan Credit Agreement") on terms and conditions substantially similar to those set forth in the form of DIP Term Loan Credit Agreement previously provided to the Approving Party of each Company (with such changes as may be approved pursuant to the delegation set forth herein), together with certain joinders of third party financing parties to the Transaction Support Agreement, subject to approval by the Bankruptcy Court, which is necessary and appropriate to conduct the business of the Company (the "DIP Term Loan Facility"); and be it further

**RESOLVED**, that the Approving Party of each Company hereby delegates to each Authorized Officer of each Company the authority to approve the form, terms, and provisions of the DIP Term Loan Credit Agreement, including the use of proceeds to provide liquidity for such Company throughout the Chapter 11 Case and such other uses as described in the DIP Term Loan Credit Agreement, any and all guarantees, security agreements, pledge agreements, other documents or notices evidencing the grant of security, reaffirmations, promissory notes, fee letters, escrow agreements, letters, notices, certificates, documents, and instruments authorized, executed, delivered, reaffirmed, verified, and filed, registered, or recorded in connection with the DIP Term Loan Facility or that may be necessary, appropriate, desirable, or advisable in connection with the DIP Term Loan Credit Agreement and the transactions contemplated thereby or otherwise contemplated by the DIP Term Loan Credit Agreement or by any such other DIP Term Loan Facility Document (collectively, the "DIP Term Loan Facility Documents"); and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to enter into, execute, deliver, certify, file, and record, and perform the obligations arising under, the DIP Term Loan Credit Agreement and any other DIP Term Loan Facility Document, together with such other documents, agreements, instruments, and certificates as may be required by the DIP Term Loan Credit Agreement and any other DIP Term Loan Facility Document, in accordance with the terms thereof; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Term Loan Credit Agreement and any other DIP Term Loan Facility Document and any related documents or instruments which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable; and be it further

*DIP ABL Facility*

**RESOLVED**, that in connection with the Chapter 11 Case of each Company, the Approving Party of each Company has determined that it is in the best interests of each Company to consummate the transactions under that certain ABL Commitment Letter consisting of a revolving credit facility in an aggregate principal amount of up to $140 million, under that certain Senior Secured Superpriority Debtor-In-Possession Asset-Based Revolving Credit Agreement by and among The Container Store, Inc., its subsidiaries party thereto, EBC and its affiliates, and EBC, as administrative agent and collateral agent (together with any exhibits and other attachments annexed thereto, the "DIP ABL Credit Agreement" and together with the DIP Term Loan Credit Agreement, the "DIP Credit Agreements") on terms and conditions substantially similar to those set forth in the DIP ABL Credit Agreement previously provided to the Approving Party of each Company (with such changes as may be approved pursuant to the delegation set forth herein), subject to approval by the Bankruptcy Court, which is necessary and appropriate to conduct the business of the Company (the "DIP ABL Facility"); and be it further

**RESOLVED**, that the Approving Party of each Company hereby delegates to each Authorized Officer of each Company the authority to approve the form, terms, and provisions of the DIP ABL Credit Agreement, including the use of proceeds to provide liquidity for such Company throughout the Chapter 11 Case and such other uses as described in the DIP ABL Credit Agreement, any and all guarantees, security agreements, pledge agreements, other documents or notices evidencing the grant of security, reaffirmations, promissory notes, fee letters, escrow agreements, letters, notices, certificates, documents, and instruments authorized, executed, delivered, reaffirmed, verified, and filed, registered, or recorded in connection with the DIP ABL Facility or that may be necessary, appropriate, desirable, or advisable in connection with the DIP ABL Credit Agreement and the transactions contemplated thereby or otherwise contemplated by the DIP ABL Credit Agreement or by any such other DIP ABL Facility Document (collectively with the DIP ABL Commitment Letter, the "DIP ABL Facility Documents" and together with the DIP Term Loan Facility Documents, the "DIP Financing Documents"); and be it further

6

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to enter into, execute, deliver, certify, file, and record, and perform the obligations arising under, the DIP ABL Credit Agreement and any other DIP ABL Facility Document, together with such other documents, agreements, instruments, and certificates as may be required by the DIP ABL Credit Agreement and any other DIP ABL Facility Document, in accordance with the terms thereof; and be it further

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP ABL Credit Agreement and any other DIP ABL Facility Document and any related documents or instruments which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable; and be it further

## V.   SEC Filings

*Approval of Filings*

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to take such actions and execute such documents as any of such Authorized Officer may deem necessary or appropriate for compliance with the Securities Act of 1933, as amended (the "Securities Act"), or the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and to cause any such documents to be filed with the Securities and Exchange Commission (the "Commission") or disseminated to the Company's stockholders as such Authorized Officer may deem necessary or appropriate; and be it further

*Termination of Registration Statements*

**RESOLVED**, that, following the execution and effectiveness of the Transaction Support Agreement, and the public announcement thereof, any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to take such actions and execute such documents as any of such Authorized Officer may deem necessary or appropriate to terminate each of such Company's registration statements under the Securities Act, including the filing with the Commission of one or more post-effective amendments to such registration statements in order to remove from registration all securities remaining unsold or otherwise unissued thereunder; and be it further

**RESOLVED**, that, following the time that the Plan becomes effective and the transactions contemplated thereby are consummated, any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to take such actions and execute such documents as any of such Authorized Officer may deem necessary or appropriate to complete the suspension or termination of all reporting obligations under Sections 13 and 15(d) of the Exchange Act; and be it further

## VI.    **Retention of Advisors**

**RESOLVED**, that in connection with each Company's Chapter 11 Case, any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized empowered, and directed, with full power of delegation, in the name and on behalf of such Company, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals which such Authorized Officer deems necessary, appropriate, advisable, or desirable in connection with the Chapter 11 Case and the transactions contemplated thereby (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard); and be it further

**RESOLVED**, that the firm of Latham & Watkins LLP is hereby retained as legal counsel for the Company in connection with the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Hunton Andrews Kurth LLP is hereby retained as legal counsel for the Company in connection with the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Houlihan Lokey Capital, Inc. is hereby retained as investment banker for the Company in connection with the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Verita Global (previously Kurtzman Carson Consultants, LLC) is hereby retained as claims, noticing, and solicitation agent in connection with the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

## VII.    **Appointment of Chief Restructuring Officer**

**RESOLVED**, that the Company, hereby creates the office of Chief Restructuring Officer; and be it further

**RESOLVED**, that TCS is authorized and directed to enter into the that certain Amended and Restated Engagement Letter between FTI Consulting, Inc. ("FTI") and TCS (the "CRO Engagement Letter") and to take any and all actions to advance the Company's rights and obligations in connection therewith, and any such prior actions are hereby ratified in their entirety; and be it further

**RESOLVED**, that each Company hereby authorizes in connection with the retention of FTI, consistent with the terms of the CRO Engagement Letter to provide each Company with a Chief Restructuring Officer (the "CRO") who shall be Mr. Chad Coben; and be it further

**RESOLVED**, that each Company hereby authorizes FTI to assign additional personnel to support the CRO and the Company, to serve in various capacities with each Company and to perform other services required of FTI pursuant to the CRO Engagement Letter; and be it further

**RESOLVED**, that each Company hereby appoints Mr. Coben as CRO of such Company, subject to Bankruptcy Court approval; and be it further

## VIII.   Limited Liability Company Agreements

**RESOLVED**, that notwithstanding any provision of any LLC Agreement to the contrary, under no circumstances shall any event of bankruptcy on the part of any Member (as defined in each LLC Agreement) of the applicable Company, including without limitation any of the events listed in Section 18-304 of the Delaware LLC Act or Section 13.1-1040.1 of the Virginia Limited Liability Company Act, cause any Member to cease to be a Member of such Company, and upon the occurrence of any such event, such Company shall continue without dissolution; and be it further

**RESOLVED**, that, notwithstanding any provision of any LLC Agreement to the contrary, each applicable Company may put into effect and carry out any decrees and orders of the Bankruptcy Court, and may take any action provided or directed by such decrees and orders, in each case without a vote or other consent or approval by any Member of the applicable Company; and be it further

**RESOLVED**, that, by executing this written consent, each LLC Agreement is hereby amended to the extent necessary to implement the resolutions of this Section VIII; and be it further

## IX.   General Authorization and Ratification

**RESOLVED**, that any Authorized Officer of each Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to enter into, execute, deliver, certify, file, register, record, and perform, such agreements, instruments, motions, affidavits, rulings of governmental or regulatory authorities, certificates, or other documents, and to take such other actions that in the judgment of the Authorized Officer shall be or become necessary, proper, advisable, or desirable in connection with the Chapter 11 Case, the Transaction Support Agreement, the ABL Commitment Letters, and the DIP Credit Agreements or any other DIP Financing Document, or any of the transactions contemplated by the foregoing; and be it further

**RESOLVED**, that any and all past or future actions taken by any Authorized Officer of each Company in the name and on behalf of such Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, reaffirmed, and approved in all respects; and be it further

**RESOLVED**, that any Authorized Officer of each Company is authorized to place a copy of these resolutions in the official records of such Company to document the actions set forth herein as actions taken by the Approving Party of such Company.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors of The Container Store Group, Inc., have executed this written consent as of the date first written above.

_____
Lisa Klinger

_____
Satish Malhotra

_____
Caryl Stern

_____
Anthony Laday

_____
Nicole Otto

_____
Wendi Sturgis

_____
Karen Stuckey

_____
Charles Tyson

_____
Kristofer Galashan

*[Signature Page to Unanimous Written Consent]*

IN WITNESS WHEREOF, the undersigned, being the sole member of C Studio Manufacturing LLC, has executed this written consent as of the date first written above.

C Studio Manufacturing Inc.

_Satish Malhotra_
_____
Name: Satish Malhotra
Title:   Chief Executive Officer

_Jeffrey A Miller_
_____
Name: Jeffrey A. Miller
Title: Chief Financial Officer

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Managers of C Studio Manufacturing LLC, have executed this written consent as of the date first written above.

_Satish Malhotra_
_____
Name: Satish Malhotra

_Jeffrey A Miller_
_____
Name: Jeffrey A. Miller

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors of C Studio Manufacturing Inc., have executed this written consent as of the date first written above.

*Satish Malhotra*

Name: Satish Malhotra

*Jeffrey A Miller*

Name: Jeffrey A. Miller

[*Signature Page to Unanimous Written Consent*]

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors of The Container Store, Inc., have executed this written consent as of the date first written above.

_____
Satish Malhotra

_____
Kristofer Galashan

IN WITNESS WHEREOF, the undersigned, being the sole member of TCS Gift Card Services, LLC, has executed this written consent as of the date first written above.

The Container Store, Inc.

*Satish Malhotra*
_____
Name: Satish Malhotra
Title:   Chief Executive Officer

*Jeffrey A Miller*
_____
Name: Jeffrey A. Miller
Title: Chief Financial Officer

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Managers of TCS Gift Card Services, LLC, have executed this written consent as of the date first written above.

*Satish Malhotra*
_____
Satish Malhotra

*Jeffrey A Miller*
_____
Jeffrey A. Miller

[*Signature Page to Unanimous Written Consent*]